<u>**FOR PUBLICATION**</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
                                                               :    Chapter 11
In re:                                                         :
                                                               :    Case No. 05-36877 (CGM)
Frontier Insurance Group, LLC,                                 :
                                                               :
                         Reorganized Debtor.                   :
                                                               :
---------------------------------------------------------------X
Benjamin Lawski,                                               :
                                                               :    Adv. No. 14-09022 (CGM)
                         Plaintiff,                            :
                                                               :
v.                                                             :
                                                               :
Frontier Insurance Group, LLC and                              :
County of Sullivan Industrial Development                      :
Authority,                                                     :
                                                               :
                         Defendants.                           :
                                                               :
---------------------------------------------------------------X

## **MEMORANDUM DECISION DENYING MOTION TO DISMISS**

**A P P E A R A N C E S :**

ALLEGAERT BERGER
& VOGEL LLP
Attorneys for Frontier
111 Broadway
20th Floor
New York, New York 10006
By:    Robert E. Malchman, Esq.

DUKER & BARRETT
Attorneys for Frontier
1585 Broadway
New York, NY 10036
By:    Richard L. Crisona

DORNBUSH SCHAEFFER
STRONGIN & VENAGLIA LLP

Attorneys for Benjamin M. Lawsky,
Superintendent of Financial Services
for the State of New York, as Liquidator
of Frontier Insurance Company
747 Third Avenue
New York, New York 10017
By:    William F. Costigan, Esq.

**CECELIA G. MORRIS**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

As stated in the foregoing decision, the Court finds that it need not abstain from hearing this proceeding under any of the doctrines relied upon by the Liquidator.

**Jurisdiction**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Chief Judge Loretta A. Preska dated January 31, 2012.  This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate).

**Background**[1]

This is a dispute over the ownership of two parcels of real property located in Sullivan County, New York, referred to by the parties as Parcels B and C. Together, Parcels B and C comprise approximately one-half (15.667 acres of a total 30.897 acres) of the Debtor's former headquarters building and the surrounding real property, which is collectively known as the "Rock Hill Property." Prior to the petition date, it appears that the Rock Hill Property was used both by the Debtor (Frontier Insurance Group, Inc. ("FIGI")) and the Debtor's wholly-owned insurance subsidiary (Frontier Insurance Company ("FIC")) as their headquarters.

---

[1] Unless otherwise indicated, all facts are from 14-09022, ECF No. 1.

It is undisputed that legal title to the Rock Hill Property is currently held by the County of Sullivan Industrial Development Authority (the "Development Authority") pursuant to a series of agreements entered into in the 1990s. It is also undisputed that the Development Authority's ownership of the Rock Hill Property expired on February 28, 2014. As to Parcel A, which comprises 15.23 acres of the headquarters compound and is the location of the actual headquarters building, it is undisputed that the reversionary interest belongs to FIC, the insurance subsidiary, which is currently in a state court liquidation in Albany under the New York State Insurance Law. The parties dispute who owns the reversionary interest in Parcels B and C, the remainder of the headquarters compound.

On the one hand, the Reorganized Debtor (Frontier Insurance Group, LLC ("FIGL")) contends that it holds the reversionary interest. According to FIGL, the Debtor donated the Rock Hill Property and its improvements to FIC in the 1990s, which were then conveyed to the Development Authority for a period of 20 years in exchange for certain tax benefits. According to FIGL, it was the Debtor—not the insurance subsidiary—that retained the reversionary interest in Parcels B and C upon the expiration of the 20-year term. On the other hand, the Superintendent of the State of New York (the "Superintendent" or the "Liquidator"), in his capacity as the state court liquidator for the insurance subsidiary, asserts that FIC holds the reversionary interest in all three parcels.

The motion currently before this Court arises out of litigation between the Superintendent and the Reorganized Debtor over who owns the reversionary interest in Parcels B and C.

a.    **Parcel A of the Rock Hill Property**

Beginning in 1991, the Development Authority agreed to assist FIC (the insurance subsidiary) with financing the acquisition and development of real estate in Sullivan County to

use as a corporate headquarters. In 1991, FIC purchased Parcel A to use for construction of the headquarters. In February 1993, FIC conveyed Parcel A to the Development Authority. This conveyance was in furtherance of an installment sale agreement executed in December 1993 between FIC and the Development Authority whereby: (i) the Development Authority would issue bonds to be used to pay for the construction of the headquarters; (ii) FIC agreed to re-purchase the property from the Development Authority by making the necessary bond payments; (iii) the Development Authority would hold title to the property as security for FIC's obligation to make payments; and (iv) the Development Authority would re-convey the property to FIC once all the payments were made. Construction of the headquarters on Parcel A was completed in 1993. From that time on, the Debtor, the insurance subsidiary, and other related companies began using the site as their headquarters.

  b.  **Parcels B and C of the Rock Hill Property**

Pursuant to the installment sale contract, FIC agreed to convey to the Development Authority the ownership of Parcel A together with "such additional real estate as [FIC] and [the Development Authority] shall mutually agree is necessary in connection with the project." In 1993, the Debtor (*not* the subsidiary insurance company) purchased the 15.667 acres of land adjacent to Parcel A (what would later become Parcels B and C). In February 1994, the Debtor transferred 2.7 acres of the new land (what is now called Parcel B) to the Development Authority. The deed effectuating the transfer shows that the land was transferred from the Debtor directly to the Development Authority (*i.e.*, it does not appear to ever have been directly owned by the insurance subsidiary).

On February 26, 1997, the Debtor transferred the remaining 12.967-acre tract (what is now called Parcel C) to the subsidiary insurance company. The same day, the insurance

subsidiary conveyed Parcel C to the Development Authority. Accordingly, at that time, the Development Authority had legal title to all three parcels. The Debtor, the insurance subsidiary, and the Development Authority then entered into an amended and restated "Payment In Lieu Of Taxes" agreement (the "1997 PILOT Agreement"), which provided certain tax benefits to the Debtor and the insurance subsidiary. By its terms, the 1997 PILOT Agreement applied to all three of the parcels that comprised the Rock Hill Property, which were all then merged into a single tax lot.

Pursuant to the 1997 PILOT Agreement, the Development Authority and FIC agreed that the Development Authority would take title to all three parcels subject to its obligation to re-convey them at the conclusion of the installment sale agreement. On the same day the parties entered into the 1997 PILOT Agreement, they all also entered into a first supplement to the installment sale agreement, which confirmed that all three parcels were to be conveyed at the conclusion of the installment payments.

      c.      **The Pole Barn and Nana's House**

By 1999, construction had begun on a 2,400 square foot maintenance shed (the "Pole Barn") and a 9,300 square foot day care facility ("Nana's House"), both of which were located on Parcel C of the Rock Hill Property. On August 1, 1999, the Debtor, the insurance subsidiary, and the Development Authority entered into a second amended and restated PILOT agreement (the "1999 PILOT Agreement") whereby the Development Authority agreed to take ownership of the Pole Barn and Nana's House, subject to its obligation to re-convey them along with the rest of the Rock Hill Property.

A month later, on September 1, 1999, the Debtor, the insurance subsidiary, and the Development Authority entered into a second supplement to the installment sale agreement. The

second supplemental installment sale agreement provides that the re-conveyance of the Rock Hill Property will take place no later than the termination date of the 1999 PILOT Agreement. By its terms, the 1999 PILOT Agreement was to run for a period of 20 years beginning on February 28, 1994. Therefore, its term expired on February 28, 2014.

        d.        **Rehabilitation Proceedings for FIC**

In late 2001, the New York County Supreme Court entered a rehabilitation order against FIC (the subsidiary insurance company) under the New York Insurance Law. The rehabilitation order appointed the predecessor to the Superintendent as the rehabilitator for FIC. The rehabilitation proceeding was later transferred to the Supreme Court in Albany County.

        e.        **The Debtor's Bankruptcy Case**

The Debtor filed its chapter 11 case on June 5, 2005. In its initial Schedule A, the Debtor listed three items that are related to the Rock Hill Property: (i) the "Headquarters Building," (ii) the Pole Barn, and (iii) Nana's House. Under the heading "Nature of Debtor's Interest in Property," the description for each item stated: "successor-in-interest to [the Development Authority]." As set forth above, the Headquarters Building is located on Parcel A and both the Pole Barn and Nana's House are located on Parcel C. The Debtor's Schedule A did not include any mention of Parcel B. Approximately one month after filing its initial schedules, the Debtor filed an amended Schedule A removing the reference to the Headquarters Building (*i.e.*, Parcel A), but leaving untouched the descriptions of the Pole Barn and Nana's House.

On December 2, 2005, this Court confirmed the Debtor's chapter 11 plan, which became effective on September 20, 2007. On the effective date, all pre-petition claims and interests against the Debtor were discharged except as otherwise provided in the plan. The plan vested certain property of the Debtor—principally cash and causes of action—in a liquidating trust for

the benefit of creditors. The remainder of the Debtor's property was vested in the Reorganized Debtor. According to the Reorganized Debtor, that "remaining property" included the reversionary interests in Parcels B and C.

On August 1, 2007, this Court entered a final decree in the Debtor's chapter 11 case. The case was closed on October 24, 2007.

### f.      Liquidation Proceedings for FIC

On November 9, 2012, the Albany County Supreme Court converted FIC's rehabilitation proceeding to a liquidation proceeding styled *In the Matter of the Liquidation of Frontier Insurance Co.*, Index No. 97/06. Among other things, the liquidation order vested the Superintendent with "title to all of [FIC]'s property, contracts and rights of action" and directed the Superintendent to "liquidate [FIC]'s business and affairs in accordance with" the New York Insurance Law. According to the Superintendent, he has concluded FIC's operations at the Rock Hill Property and has taken steps to prepare the property for sale. Notwithstanding, the Reorganized Debtor continues to use the Pole Barn (located on Parcel C) for the storage of machinery and equipment, while Nana's House (also located on Parcel C) continues to be used as a day care center.

On December 24, 2013, the Reorganized Debtor sent a letter to the Superintendent (which serves as a proof of claim in the liquidation proceeding) asserting a claim against the Rock Hill Property. In its claim, the Reorganized Debtor alleged:

> In or about 1994, with the consent and approval of the New York State Department of Insurance, [the Debtor] donated certain property and improvements to [FIC], its wholly owned subsidiary, in order to improve [FIC's] surplus. Subsequently, [the Debtor] and [FIC] conveyed several parcels of real property to [the Development Authority] in order to garner the benefit of certain tax abatements and reduce property costs. At the time of the foregoing conveyances, [the Debtor] was the owner of the southerly parcels [*i.e.*, Parcels B

Page **7** of **17**

> and C] consisting of a storage barn, day care center, parking lots, and access roads.
>
> All parcels conveyed to the [Development Authority] were to revert back to [the Debtor] at the February 2014 termination of the [1999 PILOT Agreement] . . . .

On January 31, 2014, the Superintendent responded to the Reorganized Debtor, stating that, "based upon a careful review of the [] documents, the [Superintendent] cannot discern any legal interest in the [Rock Hill Property] that [the Reorganized Debtor] still retains."

On February 24, 2014, in light of the impending February 28 deadline for the Development Authority to re-convey the property to *someone*, the Superintendent filed a petition in the Albany County Supreme Court to resolve the Reorganized Debtor's proof of claim and to direct the Development Authority to convey the property to the Superintendent. On February 25, 2014, the state court entered an order directing the Reorganized Debtor and the Development Authority to show cause why the relief requested by the Superintendent should not be granted and set a briefing schedule leading up to a hearing on the merits on May 16, 2014. In the meantime, the state court "so ordered" a stipulation among the parties that title to the Rock Hill Property would remain with the Development Authority pending further order of the court.

    g.    **Removal to Federal Court**

On March 28, 2014, before the proceedings could go forward on the merits in the state court, the Reorganized Debtor removed the action to the United States District Court for the Northern District of New York. The Reorganized Debtor then filed counterclaims against the Superintendent, including a claim for adverse possession of Parcels B and C based upon the Reorganized Debtor's alleged open, notorious, hostile and continuous possession of those parcels..

On April 28, 2014, the Superintendent filed a motion to remand the action to the Albany County Supreme Court. In that motion, the Superintendent seeks remand of the action pursuant to 28 U.S.C. §§ 1334(c)(1) (permissive abstention), 1334(c)(2) (mandatory abstention), 1452(b) (equitable abstention), and the United States Supreme Court's holding in *Burford v. Sun Oil Co.*, 319 U.S. 1424 (1943), which provides for abstention to avoid interference with ongoing state court proceedings.

### h.    The Motion to Reopen the Chapter 11 Case

In May, the Reorganized Debtor requested that FIGI's chapter 11 case be reopened so that it can move in this Court to enforce the provisions of the confirmed chapter 11 plan, which the Reorganized Debtor contends vests the reversionary interests in Parcels B and C in FIGL. The Court granted this motion on May 23, 2014. *See* Order, No. 05-36877, ECF No. 271.

### i.    Motion to Transfer before the Northern District of New York

On June 11, 2014, the Northern District of New York transferred the case to this Court and denied the Liquidator's motion to remand without prejudice so that this Court could decide whether or not to grant the Liquidator's motion to remand the action back to state court.  Thus, the action was transferred to this Court and the motion to remand the action back to state court is currently pending before the Court.

### j.    Motion to Dismiss and Remand[2]

The Liquidator makes this motion to remand the case back to the Supreme Court of the State of New York, County of Albany.  The Liquidator argues that this Court should (1) permissively abstain from hearing this case under 28 U.S.C. § 1334(c)(1) or alternatively, it should (2) equitably abstain from heaing this case under 28 U.S.C. § 1452(b).  The Liquidator argues that this Court is precluded from hearing this case by the McCarran-Ferguson Act because

---

[2] *See* Mot., No 14-09022, ECF No. 6.

New York's regulatory scheme for managing insurer insolvencies makes the Liquidation Court the exclusive forum for resolution of the issues. Finally, the Liquidator argues that this Court should abstain under the doctrine set forth in *Burford v. Sun Oil Co.*, 314 U.S. 1424 (1943).

### k.    Opposition[3]

On September 9, 2014, the Reorganized Debtor filed opposition. The Reorganized Debtor argues that the Liquidator is attempting to collaterally attack this Court's Confirmation Order. The Reorganized Debtor argues that a motion to revoke a confirmation order may only be made on the basis of fraud within 180 days after that order was entered—that deadline ended on May 30, 2006 and there are no allegations of fraud. The Reorganized Debtor argues that there is no basis for abstention under any of the doctrines and asks the Court to deny the Plaintiff's motion.

### l.    Reply[4]

The Liquidator filed a reply to the Debtor's opposition. In these papers, the Liquidator argues that the Debtor's argument rests on the notion that the Debtor owned a reversionary interest in Parcels B & C when it filed for chapter 11. The Liquidator argues that Debtor did not own such an interest.

## Discussion

At the outset, the Court notes that it views the Reorganized Debtor's request in a much different light than has been asserted by the Liquidator. The Court believes that it is being asked to interpret the Reorganized Debtor's plan and this Court's confirmation order in order to make a determination as to whether or not the property in question was part of the Debtor's estate and dealth with in the plan.

---

[3] Opp., No. 14-09022, ECF No. 10.
[4] Reply, No. 14-09022, ECF No. 14.

This Court has jurisidiction to interpret its own order. *See In re Tres Hermanos Dairy*, LLC, 2014 WL 176772 (Bankr. D.N.M. Jan. 16, 2014) (citing *Travelers Indemnity Company v. Bailey*, 557 U.S. 137(2009)). Additionally, this Court retained jurisidiction "to determine and resolve any matters related to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom."

The Court need not step on the toes of the state court by making a determination on whether the various contracts between and among the parties grant a right of reversion to the Reorhanized Debtor. The Court need only look to the plan and confirmation order to determine whether the property was included in the plan, whether the Liquidator's claim was dealth with in the plan, whether the Liquidator is enjoined from proceeding against the Debtor, whether the Reorganized Debtor is released from any liability and whether a violation of the discharge has occurred, as was alleged by the Reorganized Debtor. The Court believes that it is in a better position than the state court to make such determinations and that doing so would assist, rather than hinder, the state court. If the Court determines that this issue was not covered by the plan, it will send the matter back to state court so that the issue can be decided under state law. With this in mind, the Court will now address the Liquidator's arguments in turn.

    a.      **Permissive Abstention under 28 U.S.C. § 1334(c)(1)**

When determining whether to exercise discretionary abstention, bankruptcy courts consider the following factors:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which [non-bankruptcy] law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable [non-bankruptcy] law, (4) the presence of a related proceeding

> commenced in state court or other non-bankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing [non-bankruptcy] law claims from core bankruptcy matters to allow judgments to be entered in [non-bankruptcy] court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of non-debtor parties.

*In re Portrait Corp. of Am., Inc.*, 406 B.R. 637, 641-42 (Bankr. S.D.N.Y. 2009). Not all of these factors must be applied in making such a determination. *Id.* at 642. Although the bankruptcy court has wide discretion in deciding whether to abstain, the balance should be "heavily weighted in favor or the exercise of jurisdiction." *In re Portrait Corp. of Am., Inc.*, 406 B.R. at 642.

Here, the Court has reserved jurisdiction in its confirmation order to determine issues such as this (factor 5). The Court's inquiries would focus primarily on bankruptcy law issues—such as interpretation of the chapter 11 plan and confirmation order as well as whether the discharge was violated (factors 2 and 3). While there is a pending state court proceeding pending, some court would necessarily have to interpret this Court's orders and it is likely that this Court will have an easier time interpreting its own orders than the state court would. While there is a pending state court proceeding, the Court will not be interpreting state law at this time (factor 4).

For these reasons, the Court declines to abstain from these proceedings.

b. **Equitable Remand under 28 U.S.C. § 1452(b)**

"[T]he factors for equitable remand are virtually identical to the factors for discretionary abstention." *See Fried v. Lehman Bros. Real Estate Associates III, L.P.*, 496 B.R. 706, 712 (S.D.N.Y. 2013) *(citing and quoting Certain Underwriters at Lloyd's, London v. ABB Lummus*

*Global, Inc.*, 2004 WL 224505, *8 (S.D.N.Y. Feb. 5, 2004). As such, the court declines to equitably remand this case for the same reasons.

### c. McCarran-Ferguson Act

The Liquidator argues that the McCarran-Ferguson Act precludes this Court from hearing the case and preserves the state court's jurisdiction and prevents the litigation of claims against the insurance company from being litigated in federal court. That Act provides in relevant part: " [N]o Act of Congress shall be construed to invalidate, impair or supercede any law enacted by any State for the purpose of regulating the business of insurance, . . . unless such Act specifically relates to the business of insurance." See 15 U.S.C. § 1012(b).

Congress enacted the McCarran-Ferguson Act in response to a 1944 Supreme Court decision in *United States v. South–Eastern Underwriters Ass'n*, 322 U.S. 533 (1944), which held that federal antitrust laws applied to insurance companies. Lobbying efforts by both the states and the industry persuaded Congress that some action should be taken, apparently on the assumption that application of the antitrust laws would preclude the states from regulating and taxing insurance and would prohibit ratemaking by the industry. Declaring that "the continued regulation and taxation by the several States of the business of insurance is in the public interest," Congress passed the McCarran–Ferguson Act. *See In re Rubin*, 160 B.R. 269, 278 (Bankr. S.D.N.Y. 1993) (J. Brosman).

Pursuant to the McCarran–Ferguson Act, federal law, including the Bankruptcy Code, will be reverse preempted by state insurance law if: (i) the federal statute does not specifically relate to insurance; (ii) the state law at issue was enacted to regulate the business of insurance; and (iii) the federal statute at issue would invalidate, impair, or supersede the state law. *In re MF Global Holdings Ltd.*, 469 B.R. 177, 194 n.17 (Bankr. S.D.N.Y. 2012) (J. Glenn).

Here, prong one and two are clearly met as the Bankruptcy Code does not specifically relate to insurance and the state law at issue was enacted to regulate the business of insurance. Thus, the only remaining question is whether the statute at issue would invalidate, impair, or supersede the state law. The Supreme Court defined each of these terms in *Humana Inc. v. Forsyth (Humana)*, 525 U.S. 299, 311 (1999). "Invalidate" ordinarily means "to render ineffective, generally without providing a replacement rule or law." *Id.* at 307. "Supersede" ordinarily means "to displace (and thus render ineffective) while providing a substitute rule." *Id.* Interpreting the confirmation order will neither invalidate nor supersede the state insurance liquidation proceeding and law.

The *Humana* Court, in an attempt to clarify 15 U.S.C. § 1012(b) and the concept of "impairment," stated:

"When federal law does not directly conflict with state regulation, and when application of the federal law would not frustrate any declared state policy or interfere with a State's administrative regime, the McCarran–Ferguson Act does not preclude its application." *Id.* at 310.

The Liquidator's only argument is that the state proceeding would be impaired because the asset would be lost. But if this Court finds that the assets belongs to the Reorganized Debtor, it would not have been FIC's asset to liquidate anyway. Moreover, "a federal court's ordinary determination of property rights, interpretation of contracts, or interpretation of state statutes does not "impair" state law, even when a federal court's decision has a financial impact on the insolvent insurer's estate. *In re First Assured Warranty Corp.*, 383 B.R. 502, 541 (Bankr. D. Colo. 2008) (discussing impairment as being broader than whether one or another entity owns property); *see also In re Agway*, 357 B.R. 195, 202–05 (Bankr. N.D.N.Y. 2006) (bankruptcy

court's jurisdiction over liquidator's proof of claim against bankruptcy estate did not impair state insurance liquidation proceeding).

The Court believes that the state court insuance liquidation proceeding will not be impaired by this Court making a finding regarding the plan and confirmation order. The administrative regime will not be affected by a finding that this Court's confirmation order does or does not preclude FIC from claiming ownership of the real property in question.

### d. *Burford* abstention doctrine

The Liquidator asks this Court to abstain from hearing this issue pursuant to a principle enunciated by the Suprmee Court known as the *Burford* abstention doctrine. This doctrine instructs a federal court to abstain, as follows:
"[w]here timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

There are "three factors to consider in connection with the determination of whether federal court review would work a disruption of a state's purpose to establish a coherent public policy on a matter involving substantial concern to the public." *Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 650 (2d Cir. 2009). Those factors are as follows: "(1) the degree of specificity of the state regulatory scheme; (2) the need to give one or another debatable construction to a state statute; and (3) whether the subject matter of the litigation is traditionally one of state concern." *Hachamovitch v. DeBuono*, 159 F.3d 687, 697 (2d Cir.1998).

In its Reply, the Liquidator presents evidence in the form of declarations and emails in an attempt to show that the Debtor never owned an interest in Parcels B & C at the time of filing this petition and confirmation of the plan.  The Liquidator argues that the Court should abstain under *Burford* as proceeding would unnessisarily interfere with FIC's liquidation proceeding by wresting from the state court the determination of ownership of a multi-million dollar asset of the estate.

The Court disagrees with this summation of its role in this proceeding.  By exercising jurisdiction over this case, the Court would not be venturing into an area of state statutory regulation.  Quite the contrary, this Court will simply interpret its own order—it will not make any determination as to whether or not this real estate should or should not be an asset of FIC or the Reorganized Debtor.  The Court will only decide whether this land was part of the plan and as such, whether res judicata attaches or whether the FIC is enjoined from bringing its claims against the Reorganized Debtor.  The fact that a federal action may have a financial impact on the assets of the insolvent insurer's estate does not necessarily indicate a state's liquidation proceeding is "impaired."  *See, e.g., In re Reliance Group Holdings, Inc.*, 273 B.R. 374, 402 (Bankr. E.D. Pa. 2002) ("While the outcome of this matter may affect the amount of assets in the [insurer's] liquidation proceeding [and in the Debtor's bankruptcy cases], it will not directly impact the state's regulation of insurers or the state's ability to establish rules for the orderly rehabilitation or liquidation of insolvent insurers"); *Sevigny v. Employers Ins. of Wausau*, 411 F.3d 24, 29 (1st Cir. 2005) (in the context of *Burford* abstention, if financial impact on a insurance liquidation proceeding were a sufficient basis for abstention, a state insurance commissioner "could invoke *Burford* in every federal suit between himself as liquidator and any

third party who had a still-unsettled tort or contract dispute with the now-insolvent insurer, regardless of its actual disruptive effect upon the liquidation").

## **Conclusion**

For the foregoing reasons, the Court denies the motion to dismiss this proceeding. The Reorganized Debtor is directed to submit an order in accordance with this decision.

Dated: Poughkeepsie, New York
      October 9, 2014        /s/ Cecelia G. Morris
                                    CECELIA G. MORRIS
                                    CHIEF UNITED STATES BANKRUPTCY JUDGE